UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DARRELL LYNN JONES-BEY,

    Plaintiff,

v.                                                                                          Case No. 2:11-cv-475
                                                                                            HON. R. ALLAN EDGAR
MICHAEL R. ENGELSGJERD., et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Darrell Lynn Jones-Bey, an inmate, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Plaintiff alleges that he was denied medical care. More specifically, plaintiff alleges that surgery to remove a growth in his infected submandibular gland was unnecessarily delayed and that he was denied pain medication. Defendant Dr. Richard Miles, M.D., moves for summary judgment.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed

in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendant Dr. Miles argues that plaintiff failed to exhaust his grievance remedies against him. Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I

grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.* at ¶ HH.

Plaintiff attempted to file three grievances that could be considered relevant to the subject matter of this litigation. At Step I of grievance MBP-09-08-01973-12d1, plaintiff stated that he kited John Kimmel, but received no answer, and also spoke to a doctor about his neck. Plaintiff failed to name Dr. Miles. Plaintiff failed to properly follow procedures and timely appeal this grievance at Step III. Plaintiff's grievance was rejected as untimely at Step III. Grievance MBP 10-11-02846-28e was rejected as untimely at Step I, Step II and at Step III. Plaintiff filed this grievance naming many of the defendants in this action, including a number of John and Jane Does. It is clear that this grievance was filed in an attempt to exhaust grievances in preparation for this litigation. Grievance MBP 10-12-03187-27b was filed simply to get the names of each of the individuals involved in plaintiff's medical care.

It is clear that plaintiff failed to properly file a grievance against Dr. Miles. As noted, in *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that exhaustion requires "proper exhaustion," in compliance with prison grievance procedures. *Id.* at 90. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. Plaintiff failed to comply with the MDOC grievance time limitation and time lines. Plaintiff's failure to comply with MDOC grievance policy caused his failure to properly exhaust his grievance remedies against defendant Dr. Miles.

Alternatively, defendant Dr. Miles moves to dismiss the Eighth Amendment claim on the merits. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates

prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65

(6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

On July 27, 2009, plaintiff was examined by a nurse after he complained of pain on the side of his face and neck. Dr. Miles examined plaintiff on July 31, 2009. Dr. Miles noted that plaintiff was taking antibiotics, but was not getting better. Dr. Miles noted that an "ENT for partodectomy," would be requested. On August 26, 2009, two nurses addressed pain medication concerns. Plaintiff received ten days of Tarmadol Hel medication for pain from Dr. Miles on August 28, 2009. On September 4, 2009, Dr. Miles ordered Ultram for pain and indicated that he would re-evaluate before reordering the medication. On September 10, 2009, a nurse provided a follow-up on the ENT consultation. Plaintiff was sent by Dr. Miles to the Marquette General Hospital emergency room on September 15, 2009. Dr. Miles contacted the emergency room physician, who agreed to send plaintiff for an ENT consultation. A CT scan revealed an obstruction in plaintiff's left submandibular gland. The next day, Dr. Miles prescribed medication as directed by the hospital. On a follow-up appointment, plaintiff indicated that he was not in as much pain. Dr. Miles indicated that he would follow the suggested medication and apply for approval of ENT surgery. Plaintiff had surgery on September 29, 2009, to remove the golf ball size mass in his left submandibular area.

Dr. Miles saw plaintiff on October 1, 2009, and drained plaintiff's neck. Dr. Miles submitted a follow-up request with an ENT. After a follow-up visit on October 13, 2009, where plaintiff complained of jaw numbness, Dr. Miles contacted the Marquette General Hospital Emergency Room and surgeon's office. Plaintiff was taken to the Emergency Room at the hospital. Dr. Miles saw plaintiff again on October 28, 2009. On November 25, 2009, Dr. Miles ordered acetaminophen for pain, and prescribed the antibiotic Augmentin to prevent infection. Dr. Miles did

not provide plaintiff any further treatment because Dr. Miles left Marquette Branch Prison after this date.

In the opinion of the undersigned, Dr. Miles did not act with deliberate indifference toward plaintiff's medical needs. Dr. Miles responded to plaintiff's complaints and provided care which included sending plaintiff for off-site emergency care and treatment. Dr. Miles first examined plaintiff in late July and indicated that he could request an ENT consult. Ultimately, Dr. Miles sent plaintiff to the Marquette General Hospital emergency room on September 15, 2009, and plaintiff was able to have the ENT examination. Plaintiff received surgery and Dr. Miles continued to follow up with plaintiff's care until Dr. Miles left the facility.

In summary, in the opinion of the undersigned, plaintiff has failed to sustain his burden of proof in response to defendant's motion for summary judgment. Accordingly, it is recommended that defendant's Motion Summary Judgment (Docket #100) be granted, dismissing Dr. Miles without prejudice for plaintiff's failure to exhaust grievance remedies. Alternatively, if the court finds that plaintiff properly exhausted his claims against Dr. Miles, it is recommended that the court dismiss the claims with prejudice.[1]

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal.

---

[1] If the court adopts this recommendation, the only remaining claims would be against the unserved defendants Fernando E. Frontera, Unknown Brahani and Michael R. Jenkins. It is recommended that, because plaintiff has not perfected service on these remaining defendants, this case be dismissed in its entirety.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

                                            /s/ Timothy P. Greeley
                                            TIMOTHY P. GREELEY
                                            UNITED STATES MAGISTRATE JUDGE

Dated:   July 10, 2013